**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3439-20

DENISE COLE,

     Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
PUBLIC EMPLOYEES'
RETIREMENT SYSTEM,

     Respondent-Respondent.

_____

Argued June 8, 2022 – Decided June 28, 2022

Before Judge Hoffman, Whipple and Geiger.

On appeal from the Board of Trustees of the Public Employees' Retirement System, Department of the Treasury, PERS No. xx-4940.

Justin Schwam argued the cause for appellant (Weissman & Mintz, LLC, attorneys; Justin Schwam, of counsel and on the briefs).

Matthew Melton, Deputy Attorney General, argued the cause for respondent (Matthew J. Platkin, Acting Attorney General, attorney; Sookie Bae-Park, Assistant

Attorney General, of counsel; Matthew Melton, on the brief).

PER CURIAM

Petitioner Denise Cole appeals from the June 17, 2021 final agency decision of the Board of Trustees (the Board) of the Public Employees' Retirement System (PERS), denying her application for accidental disability retirement benefits. We affirm.

I.

In early 2000, Cole began working for the Office of the Public Defender (OPD) as an investigator. On August 27, 2004, Cole sustained injuries in an on-the-job car accident, causing her to undergo several surgeries. As a result of the accident and her injuries, Cole's State-appointed psychologist diagnosed her with major depressive disorder and anxiety.

While working for the OPD, Cole faced discipline for her behavior on numerous occasions, beginning in 2005. On February 4, 2005, the OPD issued Cole a Preliminary Notice of Disciplinary Action (PNDA) for a one-day suspension, charging her with insubordination and conduct unbecoming of a public employee. Cole v. N.J. Off. of the Pub. Def., No. A-4451-10, (App. Div. Sept. 11, 2013) (slip op. at 3-4). On June 27, 2005, a departmental hearing examiner issued a written determination finding the proposed one-day

2

suspension of Cole was an appropriate sanction. Id. at 4. On June 30, 2005, the OPD issued a Final Notice of Minor Disciplinary Action, suspending Cole for one day. Ibid.

On June 21, 2006, the OPD issued Cole a PNDA for a five-day suspension, charging her with insubordination and conduct unbecoming of a public employee. Id. at 5. On September 22, 2007, Cole received a Final Notice of Disciplinary Action sustaining the five-day suspension. Id. at 6.[1]

Cole had an altercation with a co-worker on October 5, 2006, approaching her co-worker with an escalating voice while nearing the colleague, ultimately screaming within inches of her co-worker's face. Cole was placed out of work by a State doctor on October 31, 2006, due to mental health issues. On February 26, 2007, Cole returned to work; however, her behavioral problems persisted. In February 2007, and October 25, 2007, Cole sent emails containing

---

[1] In 2005 and 2006, Cole's union filed unfair labor practice charges against the OPD relating to Cole's one-day and five-day suspensions, alleging that Cole was improperly disciplined for her activities as a union shop steward. Ibid. After a ten-day hearing, the hearing examiner issued an extensive report recommending dismissal of the complaint. Ibid. On March 31, 2011, PERC issued its written decision, adopting the findings of the hearing examiner and dismissing the complaint. Ibid. Cole appealed that decision and we affirmed. Ibid.

confidential client names to her union, notwithstanding repeated warnings to refrain from doing so.[2]

On September 28, 2007, the OPD issued Cole two PNDAs, one for a twenty-day suspension and one for a thirty-day suspension, charging Cole with multiple disciplinary infractions, including conduct unbecoming a public employee, creating a hostile work environment, disruption of the workplace, impeding the effective delivery of services, and violation of the workplace violence policy. Cole and her union appealed both suspensions to arbitration.[3]

On December 7, 2007, before the September 2007 suspensions proceeded to arbitration, the OPD issued Cole a PNDA for removal, charging her with insubordination, conduct unbecoming a public employee, and neglect of duty. The PNDA set forth detailed facts concerning instances of misconduct by Cole which constituted breach of confidentiality, disruption of the workplace, impeding the effective delivery of services, improper disclosure of confidential

---

[2] In July 2005, Cole allegedly engaged in this same misconduct.

[3] Cole's appeal of the twenty-day suspension was not arbitrated until September 27, 2011. Her appeal of the thirty-day suspension was not arbitrated until May 8, 2017. According to Cole, her thirty-day suspension "was upheld." The record does not indicate the outcome of the twenty-day suspension.

A-3439-20

information, providing false and/or misleading information in an official investigation, and violation of the public trust.

Cole requested a hearing, which occurred on March 24 and April 4, 2008. The OPD issued a Final Notice of Major Disciplinary Action on April 22, 2008, sustaining the charges against Cole and formalizing her removal.

On September 5, 2018, over ten years after her removal, Cole filed for accidental disability retirement benefits, alleging that her 2004 on-the-job car accident caused orthopedic injuries, major depression, and related anxiety, and that those conditions rendered her disabled. Before Cole received a final determination regarding her application of accidental disability retirement benefits, on April 22, 2020, Cole executed a settlement agreement with the OPD. Pursuant to this agreement, the OPD agreed to abandon the removal action against Cole, "given the employee's wish to resign in lieu of removal." By entering into this settlement agreement, the OPD and Cole avoided arbitration related to the removal action. The OPD recorded the settlement agreement as a "General Resignation," effective April 22, 2008.

Five months later, on September 21, 2020, the Division of Pensions and Benefits (the Division) informed Cole that she was ineligible to file for accidental disability benefits because, under N.J.A.C. 17:1-6.4(b), a disability

applicant "must prove that the retirement is due to a total and permanent disability and that the disability is the reason the member left employment." The Division noted Cole's voluntary resignation and that her settlement agreement provided "that she shall at no point in the future seek employment with the [OPD]."

Cole appealed this decision on October 20, 2020, arguing that her work-related "[d]isability was the [r]eason [s]he [l]eft OPD [e]mployment." She emphasized that, under her settlement agreement, the OPD agreed to abandon the removal action against her. Thus, she maintained that nothing in the agreement precluded her receiving accidental disability benefits.

On May 19, 2021, the Board reviewed and denied Cole's request for reconsideration of its previous decision, finding Cole ineligible to apply for accidental disability benefits because her disciplinary record precipitated her departure from the OPD. Further, the Board found that the settlement agreement's provision that Cole refrain from seeking future employment with the OPD was inconsistent with Cole's contention that she resigned due to a disability. The Board also denied Cole's request for an administrative hearing.

On June 17, 2021, the Board issued its final administrative determination. The Board found Cole ineligible to receive accidental disability retirement

benefits, pursuant to N.J.A.C. 17:1-6.4 and N.J.A.C. 17:2-6.15, because her disciplinary record triggered her departure, not her mental health issues. The Board rejected Cole's claim that her separation was the result of her disability. The Board found no genuine issue of material fact in dispute and thus denied Cole's request for an administrative hearing.

This appeal followed, with Cole raising the following arguments:

POINT I

THE BOARD'S JUNE 17, 2021 DETERMINATION THAT APPELLANT WAS NOT ELIGIBLE TO FILE FOR [DRB][4] BASED ON ITS CONCLUSION THAT APPELLANT'S EMPLOYMENT DID NOT END DUE TO HER DISABILITIES WAS ARBITRARY, CAPRICIOUS, AND UNREASONABLE.

    A. N.J.A.C. 17:1-6.4 Does Not Bar Appellant's Application Because She Left Employment Because of Her Disability.

    B. The Board's Determination Was Based on an Erroneous Interpretation of the Record.

    C. The Board's Interpretation of N.J.A.C. 17:2-6.15 as affecting Appellant's Eligibility to File for [DRB] was Erroneous.

    D. The Settlement Agreement Was Not Engineered to Advantage Appellant Due to Her Age.

---

[4] Disability Retirement Benefits.

POINT II

TO THE EXTENT THE BOARD'S DETERMINATION WAS PREMISED ON N.J.S.A. 43:15A-44(A) RENDERED APPELLANT INELIGIBLE, THAT DETERMINATION WAS CONTRARY TO LAW BECAUSE THE STATUTE DID NOT APPLY TO APPELLANT.

    A. The Board's Determination Abandoned Reliance on N.J.S.A. 43:15A-44(a).

    B. N.J.S.A. 43:15A-44(a) Does Not Affect Appellant's Eligibility for [DRB].

POINT III

THE BOARD'S DETERMINATION THAT NO GENUINE ISSUE OF MATERIAL FACT EXISTED TO WARRANT A FACT-FINDING HEARING WAS CONTRARY TO ESTABLISHED LAW.

II.

Appellate "review of administrative agency action is limited." Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011) (citing In re Herrmann, 192 N.J. 19, 27 (2007)). The agency's decision should be upheld "unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." Ibid. (quoting Herrmann, 192 N.J. at 27-28). "The burden of demonstrating that the agency's action was arbitrary, capricious or unreasonable rests upon the [party] challenging the administrative

action." In re Arenas, 385 N.J. Super. 440, 443-44 (App. Div. 2006) (citations omitted).

This court defers to the Board's interpretation of the statutes it is charged with enforcing. Thompson v. Bd. of Trs., Tchrs' Pension & Annuity Fund, 449 N.J. Super. 478, 483 (App. Div. 2017) (quoting Richardson, 192 N.J. at 196), aff'd o.b., 233 N.J. 232 (2018). "'Such deference has been specifically extended to state agencies that administer pension statutes,' because 'a state agency brings experience and specialized knowledge to its task of administering and regulating a legislative enactment within its field of expertise.'" Id. at 483 (quoting Piatt v. Bd. of Trs., Police & Firemen's Ret. Sys., 443 N.J. Super. 80, 99 (App. Div. 2015)).

"A reviewing court 'may not substitute its own judgment for the agency's, even though the court might have reached a different result.'" In re Stallworth, 208 N.J. 182, 194 (2011) (quoting In re Carter, 191 N.J. 474, 483 (2007)). "This is particularly true when the issue under review is directed to the agency's special 'expertise and superior knowledge of a particular field.'" Id. at 195 (quoting Herrmann, 192 N.J. at 28). When controlling facts are disputed, we accord deference to the Board's factual findings. Oceanside Charter Sch., 418 N.J. Super. at 9.

Like all public retirement systems, PERS provides for both ordinary and accidental disability retirement benefits. N.J.S.A. 43:15A-42, -43. The principal difference between ordinary and accidental disability retirement "is that ordinary disability retirement need not have a work connection." Patterson v. Bd. of Trs., State Police Ret. Sys., 194 N.J. 29, 42 (2008). A public employee member may be retired on an accidental disability pension if the employee is "permanently and totally disabled as a direct result of a traumatic event occurring during and as a result of the performance of his regular or assigned duties . . . ." N.J.S.A. 18A:66-39(c); accord Kasper v. Bd. of Trs., Tchrs' Pension & Annuity Fund, 164 N.J. 564, 572-73 (2000). A claimant must demonstrate the accident "constitutes the essential significant or the substantial contributing cause of the ultimate disability." Gerba v. Bd. of Trs., Pub. Emps.' Ret. Sys., 83 N.J. 174, 188 (1980). Accidental disability retirement benefits are greater than ordinary disability retirement benefits. Patterson, 194 N.J. at 43.

N.J.A.C. 17.1-6.4 further provides that, to be eligible to apply for accidental disability benefits, a claimant must demonstrate:

> a) Each disability retirement applicant must prove that his or her retirement is due to a total and permanent disability that renders the applicant physically or mentally incapacitated from performing normal or assigned job duties at the time the member left employment; **the disability**

A-3439-20

**must be the reason the member left employment**.

b) Members who have involuntarily or voluntarily terminated service for any of the reasons listed below will not be permitted to apply for a disability retirement:

. . .

2. Settlement agreements reached due to pending administrative or criminal charges, unless the underlying charges relate to the disability.

[N.J.A.C. 17:1-6.4(a), (b) (emphasis added).]

In addition, if a claimant is eligible to apply for accidental disability benefits, N.J.A.C. 17:2-6.15 requires that

[f]ollowing the filing of a disability retirement application, a vested member, who has not withdrawn contributions from the PERS, and has not discontinued service for more than two consecutive years, and who was otherwise eligible for a disability retirement at the time service was discontinued, shall be approved to receive disability retirement benefits by the board, if:

. . .

2. The applicant factually demonstrates to the satisfaction of the Board that service was discontinued because of the disability or disabilities.

11

Recently, we held that when a public employee resigns from service pursuant to a negotiated settlement agreement designed to resolve pending disciplinary charges, the employee is ineligible for accidental disability retirement benefits. Rooth v. Bd. of Trs., Pub. Emps.' Ret. Sys., ___ N.J. Super. ___, ___ (App. Div. 2022)("[W]hen a PERS member . . . irrevocably resigns from active service based upon a negotiated settlement agreement resolving a pending grievance concerning disciplinary charges that do not "relate to" a disability, such a separation from employment renders the member ineligible for ordinary or accidental disability retirement benefits.").

Cole contends the Board arbitrarily, capriciously, and unreasonably denied her application for DRBs by finding N.J.A.C. 17:1-6.4 barred her application. We disagree.

N.J.A.C. 17:1-6.4 makes clear that a claimant's disability must cause him or her to leave employment to qualify for accidental disability benefits. N.J.A.C. 17:1-6.4(a). The statute further provides that employees who leave employment due to pending criminal or administrative charges are not eligible for accidental disability benefits, unless those charges "relate to the disability." N.J.A.C. 17:1-6.4(b)(2). Cole argues the 2004 car accident, which caused her to suffer anxiety and depression, was the reason for her workplace behavior that resulted in her

extensive disciplinary record, and therefore, she urges this court to find that her pending administrative charges "relate to [her] disability," entitling her to accidental disability benefits.

Cole's settlement agreement with the OPD banned her from future employment with the OPD. If Cole's disability was "the reason" for her departure from the OPD, there would be no reason for such a clause in the settlement agreement. See N.J.A.C. 17:1-6.4(a). This indicates that Cole left her employment with the OPD because of her disciplinary record, not her disability.

Moreover, Cole's assertion focuses solely on her charges related to behavioral issues concerning her misconduct toward her co-workers and ignores the very serious charges that on three separate dates – in July 2005, February 2007, and October 25, 2007 – Cole sent emails containing confidential client names to her union, notwithstanding repeated warnings to refrain from doing so. These repeated instances of misconduct support the charges of improper disclosure of confidential information and violation of the public trust, serious ethical misconduct unrelated to Coles' claims of depression and anxiety. Accordingly, we are satisfied that Cole did not demonstrate that her disciplinary record "relate[s] to [her] disability." N.J.A.C. 17:1-6.4(b)(2).

Cole also avers the Board arbitrarily, capriciously, and unreasonably denied her application for accidental disability retirement benefits because it erroneously interpreted N.J.A.C. 17:2-6.15 to bar her application. For substantially the same reasons Cole does not satisfy the requirements of N.J.A.C. 17:1-6.4, she does not satisfy N.J.A.C. 17:2-6.15. Both provisions require that Cole demonstrate she left her employment because of her disability. Indeed, N.J.A.C. 17:2-6.15 provides that an eligible employee "shall be approved to receive disability retirement benefits by the board, if . . . [t]he applicant factually demonstrates to the satisfaction of the Board that service was discontinued because of the disability or disabilities." N.J.A.C. 17:2-6.15(2). Cole did not establish that she left her employment with the OPD because of her disability. The record, and Cole's settlement agreement with the OPD, demonstrate that Cole left the OPD because of her disciplinary record, not because of her disability. Accordingly, Cole does not satisfy the requirements of N.J.A.C. 17:2-6.15(2).

Cole also asserts the Board erroneously interpreted the record before it by considering her disciplinary record that was dismissed pursuant to the settlement agreement. Cole urges this court to find that, upon execution of the settlement agreement, the Board could not properly consider the disciplinary actions

14

against Cole that precipitated the settlement agreement in evaluating her claim for accidental disability benefits. We disagree.

The Board was tasked with determining whether Cole satisfied the requirements of N.J.A.C. 17:1-6.4 and N.J.A.C. 17:2-6.15(2). The record before the Board included Cole's disciplinary record and the settlement agreement. After hearing argument and examining the record before it, the Board found Cole left her employment with the OPD due to her disciplinary record, not due to her disability. Given Cole's disciplinary history with the OPD and the terms of the settlement agreement, there was "fair support in the record" to support the Board's findings. Russo, 206 N.J. at 27 (citing Herrmann, 192 N.J. at 27).

Lastly, Cole contends the Board's denial of her request for a fact-finding hearing was erroneous. "[A]n agency must grant a fact-finding hearing if material facts remain[] in dispute when the final agency decision is made." Frank v. Ivy Club, 120 N.J. 73, 98 (1990). Cole contends that, at the time of the Board's final agency decision, there was a genuine factual dispute as to whether Cole's evidence showed she resigned from the OPD because of her disability. Cole baldly asserts that the existence of a dispute as to whether she left her employment with OPD for disability or disciplinary reasons is a per se factual dispute. As noted, Cole's assertion focuses solely on her charges related to

behavioral issues concerning her misconduct toward her co-workers and ignores the very serious charges that, on multiple occasions, she sent emails containing confidential client names to her union, notwithstanding repeated warnings to refrain from doing so. Coles provides no credible argument that connects these repeated instances of serious ethical misconduct to her previously diagnosed depression and anxiety. In sum, Cole did not demonstrate there was a genuine dispute regarding any material facts when the Board made its final agency decision. Frank, 120 N.J. at 98.

Any arguments not addressed lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION